FILED

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(ALEXANDRIA DIVISION)

2014 JUL -2 P 3: 10

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| CELESTE MORTON<br>Plaintiff<br><br>v.<br><br>INOVA HEALTH SYSTEM SERVICES, INC.<br>d/b/a<br>INOVA HEALTH SYSTEM<br><br>Service on Registered Agent:<br>James Kim, Esq.<br>EAST TOWER STE 200<br>8110 GATEHOUSE RD<br>FALLS CHURCH, VA 22042<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>) CASE NO. 1:14-CV-841<br>)         (AJT/TCB)<br>)<br>) JURY TRIAL DEMANDED<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Celeste Morton brings this action against defendants Inova Health System Services, Inc. (d/b/a Inova Health System) ("Inova") alleging unlawful sex discrimination in violation of Title VII of the Civil Rights Act of 1964 and unlawful discrimination based on her age in violation of the Age Discrimination in Employment Act (29 U.S.C. § 621 *et seq.*) and in support thereof states as follows.

## PARTIES

1. Plaintiff Celeste Morton is an adult female resident of the Commonwealth of Virginia and is a citizen of the United States. Plaintiff was born in 1943. For almost 40 years, from November, 1969 until May 12, 2009 plaintiff was employed by defendant Inova.

2. Defendant Inova is a Virginia not-for-profit corporation headquartered in Falls Church, Virginia.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 626(c)(1) (ADEA claims) and jurisdiction is proper for the Title VII claims pursuant to 42 U.S.C. § 2000e-5(f)(3).

4. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391. At all times relevant to this Complaint, plaintiff was employed by defendant within the district and within this division; all of the alleged discriminatory acts took place within this division and within this district.

5. At all times relevant to this Complaint, Inova had more than 20 employees.

6. Plaintiff has met all administrative requirements prior to filing this Complaint. Plaintiff was discharged from her employment on May 12, 2009, and filed her administrative charge of discrimination with the Fairfax County Human Rights Commission on October 29, 2009; the administrative charge was also cross-filed with the United States Equal Employment Opportunity Commission.

7. On January 9, 2012, the Fairfax County Human Rights Commission found that sufficient evidence exists to support plaintiff's allegations that she was discriminated against based on her age and sex. Following this finding by the Human Rights Commission, Inova requested a public hearing and declined offers to mediate this dispute.

8. A public hearing before the full Fairfax County Human Rights Commission followed in July of 2012; following the hearing the full Human Rights Commission confirmed the findings of the investigation.

9. Because no settlement of plaintiff's claims occurred at the administrative stage, the Fairfax County Human Rights Commission was required to forward its findings to the

United States Equal Employment Opportunity Commission for review; that occurred shortly after the Commission's findings were upheld by the full Commission.

10. On April 4, 2014, the United States Equal Employment Opportunity Commission closed the file and issued plaintiff a 90-day right to sue letter.

11. This Complaint is filed within 90 days of the date the right to sue letter was issued.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

12. All preceding paragraphs are reincorporated by reference.

13. Plaintiff was born in 1943, and began working for defendants in November of 1969.

14. During the nearly 40 years plaintiff was employed by Inova, she received regular evaluations of her work performance. Without exception, plaintiff met or exceeded the legitimate expectations of her employers in each and every evaluation of her performance.

15. Plaintiff also received regular promotions, regular increases in pay and many awards during her career with Inova. In 2006, plaintiff was promoted to the position of Director of Patient Financial Services, which she held until her termination.

16. During plaintiff's nearly 40 years of employment with Inova, she was never disciplined in any way.

17. In the fall of 2008, while plaintiff was employed in the role of Director of Patient Financial Services, her supervisor was a younger male named Michael Grossman whose title was Senior Director for Patient Financial Services.

18. Additionally, a man named Paul Casillas had supervisory authority over plaintiff. Casillas, who was younger than plaintiff, held the title of Assistant Vice President at all times relevant to this Complaint.

19. In late 2008, Casillas began to make age-related comments to plaintiff. For example he told plaintiff, in September of 2008, that she should plan to retire soon, or words to that effect.

20. When plaintiff asked Casillas why he thought she should plan to retire soon, Casillas remarked that she should plan to retire soon because he knew that she had a birthday coming up soon and would be 65 years of age on her birthday, or words to that effect.

21. Throughout the fall of 2008 (when plaintiff turned 65 years of age) Casillas continued to make comments about plaintiff's age and the fact that she was the oldest director-level employee in the Patient Financial Services division at Inova.

22. In the spring of 2009, plaintiff was 65 years of age and was in fact the oldest Director-level employee in the Patient Financial Services Division of Inova. During that same time-frame, plaintiff found it necessary to take intermittent leave under the Family Medical Leave Act ("FMLA").

23. Plaintiff submitted an FMLA leave form on or about April 15, 2009, so that she could take intermittent FMLA leave to obtain treatment for her own serious medical condition.

24. Shortly after plaintiff submitted her FMLA form, in late April of 2009, Casillas spoke at a management meeting attended by plaintiff. During that meeting, Casillas made a comment that "certain Director-level employees had learned how to use the FMLA to take too much time off from work" or words to that effect.

25. Also in late April plaintiff's direct supervisor, Senior Director Michael Grossman, told plaintiff that he needed to reduce the budget in her department, and that the retirement of a Director-level employee would be the single best way to reduce the budget, or words to that effect.

26. On Friday, May 1, 2009, an incident occurred in the Patient Financial Services office at Inova.

27. An employee named Bridgette Gesami alleged that another employee named Melvin Boodie had touched her back and/or had put his arm around her waist.

28. Gesami, who had been speaking with several other employees at the time Boodie allegedly touched her, was very upset by Boodie's actions.

29. Gesami proceeded to tell a number of other employees in a loud and angry manner that Mr. Boodie had touched her. Specifically, she said to an employee named Leslie Johnson "Did you see that !@#$?" or words to that effect.

30. Gesami's tone was such that several of plaintiff's employees were concerned not by what Boodie had done, but rather with the tone of Gesami's comments and the volume of her voice, which could be heard throughout the office.

31. Johnson was concerned about the loud and aggressive nature of Gesami's reaction to Boodie's touching of her back, and reported this to plaintiff for that reason.

32. On May 1 when plaintiff learned about the incident, plaintiff was busy preparing for an awards ceremony that afternoon on behalf of the Patient Financial Services Division. Moreover, it was late in the afternoon and Gesami had already left for the day when plaintiff learned about the incident.

33. Plaintiff therefore decided to report the incident to her supervisor (Senior Director Michael Grossman) and then to Human Resources on Monday morning.

34. On Monday morning when plaintiff arrived at work, Grossman was out of the office and so was Casillas. Plaintiff therefore reported the incident to Grossman and to Human Resources on Tuesday, May 5, which was the first opportunity she had.

35. At all times relevant, Bridgette Gesami did not work under plaintiff's supervision, nor did Gesami report directly to plaintiff.

36. Instead, Gesami reported to Harold Lawrence, a male in his early 40's. At all times relevant, Lawrence held the title of "Manager" within the Patient Financial Services Division.

37. Pursuant to the Human Resources policies in effect, individuals employed at the level of "Manager" and below at Inova are to report any alleged incident to Human Resources right away.

38. Lawrence's direct supervisor was a Director named Tracy Bish; Bish was younger than plaintiff and was also male.

39. Lawrence learned about the alleged act of sexual harassment by Boodie on Friday, May 1 because Gesami reported directly to him. Despite the fact that Lawrence was employed at the "Manager" level and therefore required to report any alleged sexual harassment to Human Resources right away he did not do so.

40. Lawrence then began to discuss the alleged incident with other employees, which made matters worse; among other things, Lawrence began his own investigation and as part of his "investigation" he informed Boodie (the alleged harasser) about the incident.

41. Moreover when Lawrence informed Boodie, Lawrence committed a serious breach of yet another Inova human resources policy. Specifically, Lawrence told Boodie that he [Lawrence] had previously been accused of sexual harassment while he was employed by Inova, and that he had been disciplined pursuant to Inova's progressive discipline policy. The discipline Lawrence received concerned an instance where a female employee had alleged that Lawrence engaged in inappropriate conduct towards her.

42. Unlike Lawrence, plaintiff had never been disciplined in any manner during the nearly 40 years she worked for Inova.

43. Despite the fact that plaintiff reported the alleged incident to her supervisor and then to human resources at her earliest opportunity, she was terminated from her employment with Inova on May 12, 2009 for her actions.

44. Casillas made the decision to terminate plaintiff's employment. When he terminated plaintiff's employment, Casillas and Human Resources classified plaintiff's alleged rule infraction as a "Group II Violation." The Inova progressive discipline policy in place at the time lists Group II Violations as including things like endangering the safety of Inova patients or other employees, destroying Inova property, using illegal narcotics on Inova property, falsifying Inova records, and other serious acts.

45. Lawrence however was not terminated; he was instead disciplined in writing for his role in the complaint made by Gesami.

46. In addition, Bish (who, like plaintiff, was also employed at the Director level) also learned about the harassment and discrimination alleged by Gesami on Friday, May 1, 2009. Bish learned about the alleged harassment because he was responsible for supervising Lawrence and Lawrence had emailed him to tell him about it.

47. Like Lawrence, Bish also did not immediately inform human resources about the allegations made by Gesami; Bish was not disciplined in any way for his failure to report the matter to human resources, while plaintiff (who did report the matter to her supervisor and to human resources at her earliest opportunity) was terminated.

48. In addition, after plaintiff was terminated Inova merged the position she had held (Director of Patient Financial Services) with the Director-level position held by Bish, which in effect meant that Bish (who was a younger male employee) replaced plaintiff.

**COUNT ONE**
**UNLAWFUL DISCRIMINATION/WRONGFUL TERMINATION OF EMPLOYMENT IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT – 29 U.S.C. § 620** *et seq.*

49. All preceding paragraphs are reincorporated by reference.

50. Inova terminated plaintiff's employment for an alleged infraction of workplace rules, but did not terminate the employment of several younger employees who were similarly-situated to plaintiff.

51. Moreover, unlike plaintiff (who had no prior disciplinary record during almost 40 years of employment) one of these younger employees had a prior disciplinary record.

52. Inova's stated reason for terminating plaintiff's employment was a pretext; moreover, Inova failed to follow its own progressive discipline policy when it terminated plaintiff's employment.

53. Inova terminated plaintiff because of her age, in violation of the ADEA.

54. Plaintiff had planned to retire from Inova at the end of calendar year 2009; as a result of Inova's termination of her employment she has been damaged by the loss of seven months of salary, seven months of lost pension contributions, vacation pay, and other damages.

55. Inova willfully violated the ADEA by terminating plaintiff's employment, making an award of liquidated damages appropriate.

56. WHEREFORE, plaintiff has been damaged and demands judgment for all damages recoverable under the ADEA including an amount equal to the seven months of lost pay

in the amount of $55,000 plus pre-judgment and post-judgment interest, and compensation for her lost pension, vacation, health and welfare benefits and all other damages recoverable; plaintiff further demands an amount equal to the above as liquidated damages, plus her reasonable attorney's fees and costs as provided for by the ADEA.

## COUNT TWO
## VIOLATIONS OF THE CIVIL RIGHTS ACT OF 1964
## WRONGFUL TERMINATION/DISCRIMINATION BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## 42 U.S.C. § 2000e

57. All preceding paragraphs are reincorporated by reference.

58. Inova terminated plaintiff's employment for an alleged infraction of workplace rules, but did not terminate the employment of several male employees who were similarly-situated to plaintiff.

59. Moreover, unlike plaintiff (who had no prior disciplinary record during almost 40 years of employment) at least one of these male employees had prior disciplinary records (i.e., Lawrence).

60. Inova's stated reason for terminating plaintiff's employment was a pretext; moreover, Inova failed to follow its own progressive discipline policy when it terminated plaintiff's employment.

61. Inova terminated plaintiff because of her sex, in violation of 42 U.S.C. § 2000e.

62. Alternatively, plaintiff's sex was one factor considered when Inova made the decision to terminate plaintiff.

63. As a result of the above-alleged acts, plaintiff has experienced severe emotional distress.

64. WHEREFORE, plaintiff has been damaged and demands judgment for all damages available under the Civil Rights Act of 1964 including but not limited to seven months of lost back pay in the amount of $55,000 plus pre-judgment and post-judgment interest, and all compensatory and punitive damages available under law, and all other damages recoverable; plaintiff further demands her reasonable attorney's fees and costs as provided for by the Civil Rights Act of 1964.

65. Trial by jury is demanded for both counts of this Complaint.

For Plaintiff Celeste Morton:

_____  7/2/2014
Zachary A. Kitts
Virginia Bar # 47052
Justin Gilbert
Virginia Bar # 74083
Counsel for Plaintiff
K&G Law Group, PLLC
3554 Chain Bridge Road, Suite 400
Fairfax, Virginia 22030
Phone: 703-649-5500
Fax: 703-649-6363
Email: zkitts@kglawpllc.com
       jgilbert@kglawpllc.com